# EXHIBIT A

SUMMONS                                      SC-85-1                           Clyde Castleberry Co., Covington, GA. 30015

# IN THE SUPERIOR/~~STATE~~ COURT OF _Fayette_ COUNTY

## STATE OF GEORGIA

_Darryl M. Reshaw_

CIVIL ACTION
NUMBER _2020 V - 0198_
_WFS_

**PLAINTIFF**

VS.

_Select Portfolio Servicing Inc_

**DEFENDANT**

2020 MAR 16 AM 10 32
SHEILA STUDDARD, CLERK
CLERK'S OFFICE STATE
AND MAGISTRATE COURTS
FAYETTE COUNTY, GA.

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

DARRYL RESHAW
345 PHILLIPS DR.
FAYETTEVILLE, GA
30214

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _16th_ day of _March_ , 20 _20_ .

Clerk of Superior/~~State~~ Court

BY _Sheila Studdard/Bo_
~~Deputy~~ Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

IN THE SUPERIOR COURT OF THE STATE OF GEORGIA
COUNTY OF FAYETTE

| | |
|---|---|
| Darryl M. Reshaw,  Pro Per, | CIVIL ACTION |
| Plaintiff | FILE NO: |
| | 2020V0198 |
| vs. | WFS |
| | |
| SELECT PORTFOLIO SERVICING, INC., | JURY TRIAL DEMANDED |
| Defendant | |

FILED IN OFFICE
CLERK OF SUPERIOR, STATE
AND MAGISTRATE COURTS
FAYETTE COUNTY, GA.
2020 MAR 16  AM 10 39
SHEILA STUDDARD, CLERK

**VERIFIED COMPLAINT FOR LACK OF STANDING TO FORECLOSE, FRAUD IN THE CONCEALMENT, FRAUD IN THE INDUCEMENT, UNCONSCIONABLE CONTRACT, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, SLANDER OF TITLE, DAMAGES AND RELIEF**

COMES NOW, Plaintiff, Darryl M. Reshaw, proceeding *in propria persona*, and who files Plaintiff's **VERIFIED COMPLAINT** against Defendant SELECT PORTFOLIO SERVICING, INC., and shows unto this Court as follows <u>evidence</u> taken from a <u>Mortgage Compliance Investigations Chain of Title Analysis</u> to prove clearly and conclusively that the Defendant does not have standing and has no interest in Plaintiff's

pg. 1

property and that Defendant by extreme and outrageous conduct, intentionally, maliciously and/or recklessly has caused severe emotional distress to Plaintiff:

## JURISDICTION

1. Venue is proper in FAYETTE County, as the actions complained of occurred in FAYETTE County. This Court has jurisdiction over this matter pursuant to the State Constitution and statute.

## THE PARTIES

2. Plaintiff is now, and at all times relevant to this action, a resident of the County of FAYETTE, State of Georgia.

3. At all times relevant to this action, Plaintiff owned and has superior claim to the Real Property (the "Home") located at 345 Phillips Drive, Fayetteville, Georgia 30214.

4. Defendant **SELECT PORTFOLIO SERVICING, INC.** (SPS) is a corporation organized under the laws of Nevada with a principal place of business in 3815S West Temple, Salt Lake City, Utah 84115 and is a citizen of the State of Utah for diversity purposes, and doing business in the state of Georgia. They will be served through their Registered Agent: **Corporation Service Company**, located at **40 Technology Parkway, South, Norcross, GA 30092, Gwinnett County, Georgia.** A copy of this complaint and summons will be mailed to the above addresses Priority Mail with delivery confirmation.

5. Successor in Interest, COUNTRYWIDE BANK was a corporation, a Non-Depository Payor Bank doing business in the County of FAYETTE, State of Georgia. Plaintiff is further informed and believes, and thereon alleges, that COUNTRYWIDE BANK was the account debtor of the instant matter in a capacity of accommodated party in interest to a 26 U.S. Code § 1031 – Exchange of property held for productive use or investment warehouse line of credit, here after more particularly described in this Complaint.

6. Successor in Interest, DB STRUCTURED PRODUCTS, INC. is the "Sponsor/Seller" for bankruptcy remote Special Purpose Vehicle DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3. Plaintiff is further informed and believes, and thereon alleges, that DB

pg. 2

STRUCTURED PRODUCTS, INC. was acting in the capacity of a qualified intermediary for credit swap conveyances associated to the to the 26 U.S. Code § 1031 – Exchange of property held for productive use or investment warehouse line of credit, here after more particularly described in this Complaint.

7.    Successor in Interest, HSBC BANK USA is a corporation doing business in the County of FAYETTE, State of Georgia. HSBC BANK USA is the purported "Depositor" for bankruptcy remote Special Purpose Vehicle DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3.  Plaintiff is further informed and believes, and thereon alleges that HSBC BANK USA was acting in the capacity of a qualified intermediary for credit swap conveyances associated to the 26 U.S. Code § 1031 – Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

8.    Successor in Interest, HSBC BANK USA, NATIONAL ASSOCIATION, acting in the capacity of Trustee for the bankruptcy remote Special Purpose Vehicle DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 is doing business in the County of FAYETTE, State of Georgia. Plaintiff is informed and believes, and thereon alleges that HSBC BANK USA, NATIONAL ASSOCIATION acting in the capacity as Junior Secured Party to COUNTRYWIDE BANK in the special purpose vehicle (SPV) transaction scheme is offering securities to the secondary market for the purpose of obtaining certificate holder's acquired funds by Special Deposit to execute a 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

9.    Successor in Interest, MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC. (MERS) is a corporation doing business in the County of FAYETTE, State of Georgia. Plaintiff is informed and believes, and thereon alleges that MERS was acting in the capacity of electronic agent as a purported Nominee/Beneficiary for COUNTRYWIDE BANK under the Security Deed; subsequently acting in a capacity of bailor/bailee for each successor in interest of the bankruptcy remote Special Purpose Vehicle DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES

2007-OA3 associated to the 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

10.     Plaintiff does not know the true names, capacities, or basis for liability of Successors in Interest as each party named in some manner is liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained through discovery.  Plaintiff is informed and believes, and therefore allege that at all relevant times mentioned in this Complaint, Defendant and Successors in Interest are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by Defendant and each of Successors in Interest.

10.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned in this Complaint, the Defendant and each of the Parties in Successor Interests were the agents, employees, servant and/or the joint-ventures of the Defendant, and each of them, and in doing the things alleged herein below, and were acting within the course and scope of such agency, employment and/or joint venture.

## GENERAL ALLEGATIONS

11.     This is not a Frivolous Action, this is an Action established by clear, unequivocal and convincing evidence brought forth by Plaintiff for substantiated fraud in the inducement (*See* UCC § 3-302), misrepresentation, declaratory judgment, injunctive and equitable relief, and for compensatory, special, and general and punitive damages against a mortgage loan servicer (debt collector) Defendant with whom Plaintiff does not have and never had a relationship with.

12.     Plaintiff, homeowner, disputes Defendant's superior colorable claim to legal title and equitable title of the Prime Market Real Property in question (hereafter, the "Real Property"), which is the subject of this instant action, in so much that Plaintiff specifically pledged the Real Property collateral evidenced by the Grant Deed and further clarified under the Security Deed as Real Property to The Accommodated Non Depository Payor Bank COUNTRYWIDE BANK (hereafter, Accommodated Party) as Accommodation Party in the 26 U.S. Code §1031 – Exchange of property held for productive use or investment (hereafter, the "§1031 – Exchange").

13.     Plaintiff is informed and believes, and thereon alleges that DEUTSCHE ALT-A
SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2007-OA3 as a Junior Secured Party to COUNTRYWIDE BANK in
the §1031 – Exchange is attempting to make an unlawful claim to legal title through a fraudulent
assignment of enforcement rights of the currently un-perfected underlying Security Deed and
unlawful equitable claim to ownership to Plaintiff's Real Property through the COUNTRYWIDE
BANK hypothecated collateral purported after acquired "proceeds" of the Real Property which
through the Security Deed lien encumbering Plaintiff's Real Property; which, is being unlawfully
construed as the Intangible Payment Obligation Transferable Record Chattel Paper (hereafter, the
"Payment Intangible"), the underlying intangible collateral to the Tangible Note for
Accommodation or Bill of Exchange (hereafter, the "Tangible Note").

14.     From 1998 until the financial crash of 2008-2009, over 60 million purported consumer
credit mortgage loan transactions were purportedly sold by Non-Depository Payor Banks to
Special Purpose Vehicles (hereinafter "SPV") via 26 U.S. Code §1031 – Exchange of property
held for productive use or investment (hereafter, the "§1031 – Exchange"). **The Plaintiff's**
**purported home loan was one of the 60 million scheduled for exchange.**

PSA for CWABS 2006-25

https://www.sec.gov/Archives/edgar/data/1383362/000090514807000163/efc7-0028_emailex41.txt

15.     Plaintiff is informed and believes, and thereon alleges that a §1031 – Exchange is the
mechanical transactional scheme whereby a purported Tangible Note is converted/exchanged for
a Payment Intangible asset to provide an alternative investment offering via Special Deposit to
certificate or bond holders which were expected to be relatively safe; which, were offered by
Wall Street Firms to the secondary market through purported mortgage backed securities.
See OCC Asset Securitization Manual 1997, page 23.



16.     Plaintiff is informed and believes, and thereon alleges that, certain tax laws known as the Real Estate Mortgage Investment Conduit (hereafter, REMIC) Tax Reform Act of 1986 were to be observed, and whereby the Non-Depository Payor Banks and Issuing Entities REMIC would be protected from either entity going into bankruptcy. To achieve the desired "bankruptcy remoteness," purported numerous "True Sales" of Plaintiff's Tangible Note would have had to of occurred by operation of All applicable law.

17.     Plaintiff is further informed and believes, and thereon alleges that there was no "True Sale" of Plaintiff's Tangible Note, a circumstance whereby MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), sold Plaintiff's Tangible Note [1] to the "buyer/seller" BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING LP **in an ordinary course of business** by offer, acceptance, delivery and

---

[1] Mortgage Electronic Registration Systems, Inc. (MERS), purports to transfer the note and obligation which is a legal impossibility as MERS never owned the Note of Obligation for Plaintiff. Hence one cannot sell what one does not own as state from the maxim of law "Nemo dat quod non habet".

pg. 6

consideration given for full value of the entire instrument.  See Real Estate and the Tax Reform Act of 1986.

18.     The Accommodated Non Depository Payor Bank (hereafter, Accommodated  Party) COUNTRYWIDE BANK, purports to have negotiated in accordance to all applicable law the Tangible Note obligation **in an ordinary course of business** to successor defendant COUNTRYWIDE HOME LOANS LP; likewise, Plaintiff is informed and believes, and thereon alleges that COUNTRYWIDE BANK has unlawfully purported to assign, transfer, or convey account debtor capacity as Accommodated  Party to COUNTRYWIDE HOME LOANS LP successor and successor parties in consideration for a service release premium received for Accommodated Party services rendered for Originating the §1031 – Exchange on or before closing date of DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 .

19.     Plaintiff is informed and believes, and thereon alleges that COUNTRYWIDE BANK never negotiated the Tangible Note by operation of law for full value in accordance with all applicable law to COUNTRYWIDE HOME LOANS LP.

20.     The Accommodated Party COUNTRYWIDE BANK, purports to have assigned/transfer a beneficial security interest over Plaintiff's Real Property evidenced by COUNTRYWIDE BANK recorded Security Deed lien **in an ordinary course of business** to successor defendant of the §1031 – Exchange.

21.     Plaintiff is informed and believes, and thereon alleges that COUNTRYWIDE BANK never negotiated the Tangible Note Bill of Exchange for full value in accordance to all applicable law.

22.     Plaintiff is further informed and believes, and thereon alleges that at best, COUNTRYWIDE BANK delivered  a converted (statutory conversion) an unsecured Tangible Note as "order paper" to COUNTRYWIDE HOME LOANS LP for settlement for Accommodated Party services rendered associated to originating the exchange transaction, **not in an ordinary course of business** and therefore, could not negotiate, assign, transfer the underlying security intangible beneficial security interest enforcement right over the power of

sale covenant in the COUNTRYWIDE BANK currently un-perfected Security Deed lien encumbering Plaintiff's Real Property.

23.    As part of the transaction scheme of 26 U.S. Code §1031 – Exchange, Parties Successor in Interest deployed MERS as an electronic agent under the Constructive Security Deed as nominee/beneficiary for each successor party as bailor/bailee to streamline a purportedly hypothecated security interest "Secret Liens" over the Payment Intangible after acquired collateral unlawfully construed as "Proceeds" of Plaintiff's Real Property.  Plaintiff is informed and believes, and thereon allege that MERS only tracks and updates ownership of the Payment Intangible registered with the MERS database software system; MERS cannot transfer the beneficial right to the Tangible Accommodated Note instrument; a legitimate "True Sale" of a Tangible Note instrument can only be transferred in an ordinary course of business by proper negotiation for full value, transfer and delivery by operation of all applicable law.  *See* MERS Procedural Manual, MERS Patent.

https://www.scribd.com/document/51225605/MERS-Procedures-Rel19-5-Draft

24.    Plaintiff is further informed and believes, and thereon alleges that a payment for **full value of the entire instrument in an ordinary course of business** to COUNTRYWIDE BANK from COUNTRYWIDE HOME LOANS LP for the Tangible  Note for Accommodation at or before its maturity date destroys the Tangible Notes negotiability thus, no documents or records can be produced that demonstrate that prior to the May 31, 2007 closing date for DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 , the Tangible Note was duly indorsed, transferred and delivered to DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 **in an ordinary course of business** by operation of all applicable law, including all intervening transfers including any purported transfers in the personal property Payment Intangible. Nor can any documents or records be produced that demonstrate that prior to the May 31, 2007, the Security Deed was duly assigned, transferred and delivered to DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3, via the Custodian of Records, HSBC BANK USA, NATIONAL ASSOCIATION, including all Secret Liens purportedly securing the Payment Intangible intervening transfers/assignments.

pg. 8

25.     Plaintiff further alleges that any documents, i.e. MERS Assignment of Security Deed that purport to transfer a hypothecated beneficial security interest over the Payment Intangible underlying collateral of the Tangible Note or Bill of Exchange to DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 after the Closing Date May 31, 2007 **are void as a matter of law**; no security interest in the Real Property was perfected in the name of any of the successor defendant to the §1031 - Exchange. The alleged holder of the Tangible Note is not the beneficiary of the Security Deed.

26.     The alleged beneficiary of Plaintiff's Security Deed, MERS, does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest as agent or nominee to any action taken or to be taken against the Real Property by successor Defendants to the §1031 – Exchange. See PSA Section 2.01 Conveyance of Mortgage Loans.

27.     Plaintiff is also informed and believes, and thereon alleges that at all times herein mentioned, any assignment of a Security Deed **without proper transfer** in an ordinary course of business of the Tangible Note that it secures is a <u>legal nullity by operation of law</u>. Plaintiff is informed and believes, and thereon alleges that the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of SPV investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the purported mortgage loans which form the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC.

28.     Plaintiff alleges that Defendant and each Successor in Interest, cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Security Deed, resulting in imperfect security interests and claims; therefore, neither one of the Parties have perfected any colorable claim of title or security interest in the Real Property. Not now not ever.

pg. 9

The Depositor MortgageIT, Inc., a New York corporation formed the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3, a common law trust created under the laws of the State of New York, pursuant to the Pooling and Servicing Agreement. **Depositor MortgageIT INC. is the only authorized party to assign its interest in loans to the trustee on behalf of certificate holders.** Even though Trustee HSBC BANK USA, NATIONAL ASSOCIATION states that evidence of registration in the Mortgage Electronic Registration Systems, Inc. ("MERS") is acceptable in lieu of assignments at the closing date into County records, HSBC BANK USA, NATIONAL ASSOCIATION was still subject to applicable state and local laws. The intent of the recording of documents publically is to let all interested parties understand the rights and obligations of real property owners and lenders. The use of a privately-owned alternate system conceals such information; and a lack of internal control may allow unauthorized parties to act as a sponsor, bankruptcy-remote depositor, trustee, or beneficial owner of a security interest simply by having an employee or agent sign that they are an officer of MERS. HSBC BANK USA, NATIONAL ASSOCIATION and other securitizing parties cannot just make up their own rules.

29.   Defendant and Successors of Interest, each of them, cannot establish that the Security Deed purportedly securing the Tangible Note, were legally or properly acquired in accordance to all applicable law. Plaintiff therefore alleges, upon information and belief, that none of the parties to the §1031 – Exchange transaction, nor any of the parties in this case, hold a perfected and secured claim in the Real Property; and that all parties including the Defendant are **equitably estopped** and precluded from asserting an unsecured claim against Plaintiff's estate.

30.   Plaintiff alleges that an actual controversy has arisen and now exists between Plaintiff and Defendants. Plaintiff desires a judicial determination and declaration of its rights about the Real Property and the corresponding Tangible Note and Security Deed.

31.   Plaintiff also seeks redress from Defendant identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

   a.   An invalid and unperfected security interest in Plaintiff's Real Property hereinafter described;

   b.   Void "True Sales;"

pg. 10

c.  An incomplete and ineffectual perfection of a security interest in Plaintiff's Real
Property

## STATEMENT OF PERTINENT FACTS

32.   Plaintiff hired CERTIFIED FORENSIC LOAN AUDITOR Joseph R. Esquqvel Jr., out of
Travis county State of Texas to perform a <u>Mortgage Compliance Investigations Chain of Title
Analysis</u> ("the Audit") completed by a court qualified expert witness to verify the claims of this
Complaint on Plaintiff's property. The Audit clearly shows that the **Plaintiff's loan was
SECURITIZED.** *See* **EXHIBIT "A"** Affidavit by Auditor Joseph R. Esquqvel Jr., a court
appointed expert witness.

33.    The results from the Audit clearly show that Plaintiff's Note and Security Deed took two
distinctly different ways. Plaintiff's Security Deed was never transferred. The Note was however
pooled, sold, transferred with other loans and mortgages.  *See* **pages 3 and 4 for chain of title
in Exhibit "A"**

34.    Plaintiff is the Superior Recorded Owner of the Prime Market Property.

35.    Plaintiff was issued an Uncertificated Security to execute in the capacity of
(Accommodation Party) to a Tangible Note Bill of Exchange on April 30, 2007 regarding a
purported loan to (Accommodated Party) COUNTRYWIDE BANK for $569,000.00.

36.    COUNTRYWIDE BANK is an account debtor Accommodated Party to a 26 U.S. Code §
1031 – Exchange of property held for productive use or investment.

37.    Plaintiff herein alleges that the signatures on the Tangible Note Bill of Exchange
instrument as the Accommodation party constitutes a **statutory capacity as Surety** for the Non-
Depository Payor Bank, the original Accommodated secured party of record, acting as
Trustee/Account Debtor pursuant to a Special Deposit 26 U.S. Code§1031 – **Exchange of
property** held for productive use or investment.

38.    Plaintiff pledged a Constructive Security Deed granting Legal Title to Accommodate
COUNTRYWIDE BANK to file against Plaintiff's Superior Claim to Title filed in the Official
Records of the FAYETTE County Recorder's Office.

39.    The purported Mortgage loan contracts between the parties are specific as to the duties of each party.

40.    FAYETTE County Records shows an "Assignment of Security Deed" dated July 21, 2011 and filed as ins# 861843 Book 3777 Page 200, signed by Bud Kamyabi as Assistant Secretary where MERS grants, assigns, and transfer to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP.

41.    FAYETTE County Records shows a "Transfer and Assignment of Deed to secure debt" dated May 11, 2012 and filed as ins# 884061 Book 3896 Page 546, signed by Serna Harman and Franisco J. Avila Jr. as Vice President and Assistant Vice President. BANK OF AMERICA grants, assigns, and transfer to HSBC Bank USA as Trustee for the Holders of the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3.

42.    The May 11, 2012 Assignment purports to assign all right, title and interest in Plaintiffs Security Deed to HSBC Bank USA. The May 11, 2012 Assignment occurred approximately five years after the Closing Date (May 31, 2007) of the Trust in violations of the terms of the Trust and is therefore VOID.

43.    Plaintiff alleges that only the Depositor, MortgageIT Securities Corp is the rightful party that can convey the asset into the trust pursuant to investor offering documents as filed with the Securities and Exchange Commission. [2]

44.    Depositor MortgageIT is the only authorized party to assign its interest in loans to the trustee on behalf of certificate holders.  Even though Sponsor COUNTRYWIDE BANK states that evidence of registration is acceptable in lieu of assignments at the closing date into County records, COUNTRYWIDE BANK was still subject to applicable state and local laws.

45.    The intent of the recording of documents publically is to let all interested parties understand the rights and obligations of real property owners and lenders.

46.    COUNTRYWIDE BANK was a "correspondent lender" that originated mortgage loans. These loans, in turn, have been sold and transferred into a "federally-approved securitization"

---

[2] MortgageIT as Depositor for the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 is not named or referenced in any way on the Plaintiffs Security Deed.

trust named the MortgageIT TRUST.

47.   **The Note and Deed have taken two distinctly different paths.  The Note has been securitized into the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3.** The written agreement that created the DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3  is a "Pooling and Servicing Agreement" (PSA).  The Trust is also described in a "Prospectus Supplement," which is available in the Bloomberg, LP website.   The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT MAY 31, 2007.  The promissory note in this case has become trust property in compliance with the requirement set forth in the PSA.  The acquisition of the assets of the subject Trust and the PSA are governed under the law.

48.   **In view of the foregoing, any Assignment of Security Deed executed after the Trust's Closing Date would be a void act for the reason that it violates the express terms of the Trust instrument.**

49.   The loan was originally made by COUNTRYWIDE BANK was sold and transferred to DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 . There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

**FIRST CAUSE OF ACTION:**
**LACK OF STANDING/WRONGFUL FORECLOSURE**

### A. Defendant Does Not Have Standing to Hold a Foreclose Sale

50.   An actual controversy has arisen and now exists between Plaintiff and Defendant specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendant does not have an equitable right to foreclose at anytime on the Property because Defendant and any interested party failed to perfect any security interest in the Real Property collateral, and they cannot prove to the court they have a valid interest as a real party in interest to the underlying Security Deed.

51.   **Thus, the purported power of sale, or power to foreclose non-judicially, by the Defendant no longer applies.**

52.   Plaintiff requests this Court find that the purported power of sale contained in the Security Deed is a **nullity by operation of law**, because Defendant's and interested parties actions in the processing, handling and foreclosure of this §1031 - Exchange involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of Georgia State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendant. Plaintiff further requests that title to the Real Property remain in Plaintiff's name during the pendency of this litigation, and deem that any sale of the Real Property is "unlawful and void".

## MERS cannot be a Real Party in Interest in a Securitized Mortgage

53.   Since the creation of Defendant's Security Deed, MERS was named the "nominee beneficiary" of the Security Deed.

54.   Plaintiff is informed and believes, and thereon alleges that MERS lacks the authority under its corporate charter to foreclose a Security Deed, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter limits MERS powers and duties to functioning as an electronic registration system of Payment Intangible Chattel Paper Transferable Records as the underlying collateral to the Tangible Note for the Accommodation Bill of Exchange. [3]

55.   Plaintiff is informed and believes, and thereon alleges that to hold or conduct a foreclosure action, a person or entity must be able to prove that they have legal capacity as interested party and standing.

56.   Clearly, provable and uncontestable, SELECT PORTFOLIO SERVICING, INC does not have standing.

57.   The Tangible Note in this action identifies the entity to whom it accommodated, the Originator. Therefore, the Tangible Note herein cannot be transferred **in an ordinary course of**

---

[3] From MERS Procedures Manual ref: 19.0 dated June 14, 2010, "MERS agrees not to assert any rights." MERS and the Member agree that the MERS System is not a vehicle for creating or transferring beneficial interest in mortgage loans…"

business; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that Tangible Note negotiation was executed in an ordinary course of business, nor are there any other notices which establish that the Originator sold the Tangible Note to another party for full value.

58.    Furthermore, insofar as the parties to the §1031 - Exchange of Defendant's purported transfer off enforcement contract rights over the underlying Security Deed base their claim that the Tangible Note and underlying Security was negotiated by operation of law in an ordinary course of business to HSBC BANK USA, NATIONAL ASSOCIATION, the Trustee of the § 1031 - Exchange herein, by the Originator.

59.    It is well established State law that the assignment of a Security Deed does not automatically assign the Tangible Note nor the underlying Payment Intangible Transferrable Record as the security interest is incident of the Tangible Note debt obligation.

60.    Pursuant to State law, one must be able to prove their capacity of holder of the Tangible Note as one with rights acquired in an ordinary course of business to perfect the transfer of enforcement contract rights to the Security Deed instrument as collateral for a Tangible Note debt obligation.

61.    Without proper negotiation and physical transfer, the "true sale" of the Tangible Note is invalid as a fraudulent conveyance, or as an unsecured Tangible Note stripped for the Real Property collateral.

62.    Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law.  Therefore, MERS cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in Real Property, and cannot recover anything from Plaintiff, with unclean hands.

63.    Defendant, and each of the Parties of Interest, through the actions alleged above, claimed the right to schedule an illegal foreclosure sale of Plaintiff's Real Property under the Security Deed on the Real Property via an *in Rem* action supported by false or fraudulent documents.

64.    Said unlawful action has caused and continues to cause Plaintiff great and irreparable injury in that Real Property is unique.

pg. 15

65.    The wrongful conduct of the above Defendant, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff.  Plaintiff will not have the beneficial use and enjoyment of his Home and will lose the Property.

66.    Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate to prevent irreparable loss to Plaintiff.

67.    Plaintiff has suffered and will continue to suffer unless Defendant's wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage he will suffer if Defendant holds an illegal foreclosure.

## SECOND CAUSE OF ACTION
## FRAUD IN THE CONCEALMENT

68.    Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

  a.  Concealed or suppressed a material fact;
  b.  Had knowledge of this material fact;
  c.  That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff;
  d.  That Defendant suppressed or concealed this fact with the intention that Plaintiff be misled as to the true condition of the property; and
  e.  That Plaintiff was reasonably so misled; and
  f.  That Plaintiff suffered damage.

69.    COUNTRYWIDE BANK concealed the fact that they were not a Federal Reserve Depository Bank.  The purported lender claims to have accepted by negotiation the issuer Plaintiff's negotiable instrument as debtor in a deposit account; COUNTRYWIDE BANK furthered their deception by purporting to give consideration for an instrument purport to Plaintiff's issued Negotiable Instrument in the form of real money executing an underlying obligation (indebtedness) between the parties to the purported contract.

70.    COUNTRYWIDE BANK concealed in the presentation of the terms of the Mortgage contract a cross acceptance of which Plaintiff, the issuer of the negotiable instrument would accept ownership of the real property collateral evidenced by the Warranty Deed for executing an accommodation negotiable instrument and pledged security agreement on behalf of COUNTRYWIDE BANK, the Accommodated party, for the purpose of a material variation to

78.   COUNTRYWIDE BANK's failure to disclose the material terms of the transaction induced Plaintiff to enter the §1031 – Exchange purported loan and accept the Services as Accommodated Party herein.

79.   Defendant and Parties of Interest were aware of the misrepresentations and profited from them.

80.   As a direct and proximate result of the misrepresentations and concealment, Plaintiff has been damaged in an amount to be proven at trial, including but not limited to costs of the loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff incurred costs and attorney's fees.

81.   Defendant is guilty of malice, fraud and/or oppression. Defendant's actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.

82.   As such, Plaintiff is entitled to recover in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

### THIRD CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT

83.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

84.   Defendant intentionally misrepresented to Plaintiff that Defendant is entitled to exercise the power of sale provision contained in the Security Deed. In fact, Defendant is not entitled to do so and has no legal, equitable, or actual beneficial interest whatsoever in the Property.

85.   Defendant misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Security Deed. However, this was not true and was a misrepresentation of material fact. **Documents clearly state that the Originator sold the mortgage loan instrument to** DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 .

86.   Defendant was and are attempting to collect on an intangible debt obligation via the §1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property. **This type of conduct is outrageous.** Defendant fraudulently sent Plaintiff a

notice of foreclosure on the Real Property which they have no monetary or pecuniary interest, and doing so with unclean hands.

87.   Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter the §1031 – Exchange and accept the Accommodated Services as alleged herein.

88.   The material misrepresentations were made by Defendant with the intent to cause Plaintiff to reasonably rely on the misrepresentation to induce Plaintiff to submit to an upcoming foreclosure on the Real Property as opposed to recovering from predecessors in the § 1031 – Exchange on the Payment Intangible Obligation.

89.   Defendant was aware of the misrepresentations and is profiting from them.

90.   As a direct and proximate result of the misrepresentations and illegal concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of the loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff incurred costs and attorney's fees.

91.   Defendant is guilty of malice, fraud and/or oppression. Defendant's actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

## FOURTH CAUSE OF ACTION
## UNCONSIONABLE CONTRACT

(Against COUNTRYWIDE BANK)

92.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93.   The actions of Defendant as set forth herein, resulted in Plaintiff being forced, tricked, and mislead into parting with their property.

94.   Generally, one must prove the following to bring a legally sufficient claim of Unconscionable Contract.

      a.      Undue Influence;
      b.      Duress;
      c.      Unequal Bargaining Power;
      d.      Unfair Surprise; and

e.          Limited Warranty

95.    COUNTRYWIDE BANK presented in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met to qualify for a loan of money for the subject property from COUNTRYWIDE BANK

96.    COUNTRYWIDE BANK presented in the origination of the purported loan that a preliminary signature on the Mortgage loan contract was required to "lock in" an interest rate regarding the terms of the purported loan.

97.    COUNTRYWIDE BANK failed to clarify in the terms of the Mortgage loan contract that COUNTRYWIDE BANK, the Originator on the contract, was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money.

98.    COUNTRYWIDE BANK concealed they were financially benefitting by bargaining with a third party to acquire a service release premium via wire funds transfer to table fund the purported loan at the closing using a warehouse line of credit.

99.    COUNTRYWIDE BANK knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when attempting to grant an alternate means of collection via the Security Instrument real property lien Mortgage to COUNTRYWIDE BANK

100.    COUNTRYWIDE BANK intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.

### FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT

101.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102.    The terms of the mortgage contract are clear.

103.    COUNTRYWIDE BANK was obligated to satisfy, release and reconvey the beneficial security interest in Plaintiff's pledged Security Deed upon payment of all sums associated with the release premium to COUNTRYWIDE BANK for Accommodated Party services rendered.

Case 3:20-cv-00063-TCB-RGV   Document 1-1   Filed 04/30/20   Page 22 of 38

104.   COUNTRYWIDE BANK **WAS PAID IN FULL** for their Accommodated capacity to the Tangible Note and Security Deed when it sold and relinquished its interest in Plaintiff's real property to Depositor MortgageIT SECURITIES CORP

105.   COUNTRYWIDE BANK failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Security Deed.

**Plaintiff's loan was placed within the COUNTRYWIDE BANK portfolio of loans held in inventory or for sale, and used as collateral to increase secured borrowings prior to failure.   Although COUNTRYWIDE BANK. originated the loan, they or any subsequent purchaser may not have properly endorsed the subject note nor perfected the security interest in the note pursuant to the Georgia Uniform Commercial Code.**

**Identification of exact COUNTRYWIDE BANK. or other portfolio may be obtained through a Request for Information under Regulations X or Z, voluntary lender disclosure, or discovery through litigation.**

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

106.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.   Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

    a.      Breach of full disclosure;
    b.      Breach of good faith and fair dealing;
    c.      Misuse of superior or influential position;
    d.      Misuse of superior knowledge; and
    e.      Failure to act in another's best interest

108.   COUNTRYWIDE BANK failed to disclose to Plaintiff that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 .

109.    COUNTRYWIDE BANK as beneficiary under the Mortgage having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and reconvey the Real Property Lien Security Deed and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium.

110.    After April 30, 2007, and unknown to Plaintiff, COUNTRYWIDE BANK for payment rendered through a service release premium divested itself of their capacity under Accommodated Note but, did not comply with the covenants of the Security Deed specifically, Covenant 23 – Release.

111.    COUNTRYWIDE BANK's acting not in the best interest of the grantor of the Security Deed failed to adhere to their Fiduciary Duties. COUNTRYWIDE BANK was to satisfy, release and reconvey the security instrument allowing Plaintiff to maintain clear and marketable title.

112.    Because of its failure to comply with the Mortgage, Defendant caused a cloud on Plaintiff's superior claim to title.  Thus, Plaintiff was harmed.

### SEVENTH CAUSE OF ACTION
### SLANDER OF TITLE

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

114.    Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

> a. There was a communication to a third party of;
> b. A false statement;
> c. Derogatory to another's title;
> d. With malice; and
> e. Causing special damages

115.    There are no UCC 1 Financial Statements perfecting a personal property interest regarding the purported true sale(s) and conveyance of credit swaps in 26 U.S. Code §1031 – Exchange of transferable record Smart Note personal property (payment intangible) in accordance of local law of jurisdiction.

116.    There are no UCC 1 Financial Statements perfecting personal property interest in the Accommodated Security Deed contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice to the world of the true capacity of the purported parties in the §1031 – Exchange in performance of the securities of DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3 .

(See Asset Securitization Comptroller's Handbook Nov. 1997
http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf

117.    Such instruments remained unrecorded as "Secret Liens" within the collateral file and was never submitted for recordation to perfect Defendant's rights to the Accommodated Tangible Note and pledged Security Deed lien and the right to enforce an alternate means of collection.

118.    Equitable rights to the Payment Intangible in the§ 1031 – Exchange do not extend to a lien on Real Property in accordance with statutory law.

119.    Defendant, by withholding such facts has potentially committed a grave error Slander of Title causing special damage.

111.    The act of recording the purported December 6, 2011 Assignment of the Security Deed into the Official Records of the FAYETTE County Recorder's Office **is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's Claim of Title.**

## EIGHTH CAUSE OF ACTION
## DECLARATORY RELIEF

127.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.    An actual controversy has arisen and now exists between Plaintiff and Defendant specified hereinabove regarding Plaintiff's respective rights and duties in the subject note and security instrument.  Plaintiff requests a judicial determination of the rights, obligations and interest of the parties regarding the subject property, and such determination is necessary and

appropriate under the circumstances so that all parties may ascertain and know their rights, obligations and interests regarding the subject property.

129.   Plaintiff should be the equitable owner of the Subject Property.

130.   Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendant be declared to have no interest estate, right, title or interest in the subject property and that the Defendant, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

## NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

131.   Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

132.   Based upon the foregoing, Defendant by extreme and outrageous conduct, intentionally, maliciously and/or recklessly caused severe emotional distress to Plaintiff by the aforementioned acts, omissions, and other conduct and acts to be adduced at trail.

133.   Such conduct caused damages to Plaintiff in the form of pecuniary loss and mental anguish and constituted an actionable and intentional infliction of emotional distress upon the Plaintiff.

134.   Defendant intended to cause and/or recklessly caused emotional distress and/or knew or should have known that their actions taken would result in serious emotional distress to the Plaintiff.

135.   Defendant's conduct was as extreme and outrageous as to go beyond all possible bounds of reason and decency and was such that it can be considered as utterly intolerable in a civilized community.

136.   The Plaintiff's damages were and remain serious and of a nature that no reasonable person could be expected to endure it.

137.   As a direct and proximate result thereof, Plaintiff has suffered injury to his psychological well-being, detraction from job performance, loss of stability and household, loss of reputation, defamation of title, and/or otherwise.

138.   As a direct and proximate result of the conduct of the Defendant, Plaintiff has suffered lost wages and earning capacity, loss of stability and household, extreme nervousness, mental anguish, the inability to engage in recreational activities, and emotional distress; which continue to this day and into the foreseeable future.

139.   As a direct and proximate result thereof, Plaintiff suffered incidental, consequential, and compensatory damages, costs and expenses in an amount greater than Twenty-Five Thousand Dollars ($25,000.00), but to be determined by the trier of fact.

140.   The acts and/or omissions of Defendant were deliberate, intentional, knowing, willful, reckless, and/or malicious.

141.   Based upon the foregoing, the Plaintiff is entitled to an award of punitive damages against Defendant as the aforementioned conduct was malicious and/or characterized by hatred, ill will and/or a spirit of revenge and/or said party had a conscious disregard for the rights and safety of Plaintiff which had a great probability of causing, and in fact did cause substantial harm to the Plaintiff.

142.   Based upon the foregoing, the Plaintiff, punitive damages in an amount calculated to deter and to punish Defendant from the aforementioned actions, misrepresentations and/or omissions and/or to deter others from the same conduct.

## SECURITIZATION SUMMARY

143.   Generally, if the Mortgage and the Note are not together with the same entity, **there can be no legal enforcement of the Note.** The Mortgage enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Mortgage and the Note are separated, **foreclosure legally cannot occur.** The Note cannot be enforced by the Mortgage if each contains a different mortgagee/beneficiary; and, if the Mortgage is not itself a legally enforceable instrument, **there can be no valid foreclosure on the homeowners' property.**

144.   Plaintiff's loan was sold, pooled and turned into a security, such event would indicate that the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

145.   Further said, once the Plaintiff's Note was converted into a stock, or stock equivalent,

that event would indicate that the Note is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. **Double dipping is a form of securities fraud.**

146.    Once Plaintiff's loan has been securitized, which the Plaintiff's loan has been done many times, that event would indicate that the loan forever loses its security component and the right to foreclose through the Mortgage is **forever lost.**

147.    The findings of Plaintiff's Audit indicate that the Promissory Note was converted into a stock as a permanent fixture.  As a stock it is governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al.  There is no evidence on Record to indicate that the Mortgage was ever transferred concurrently with the purported legal transfer of the Note, such that the Mortgage and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed in this action.

## PRAYER

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiff prays that Defendant SELECT PORTFOLIO SERVICING, INC. be cited to appear and answer herein, and that upon final hearing, Plaintiff be awarded judgment:

- Declaring that Defendant lacks any interest in the subject property which permits them to foreclose, evict, or attempt to evict, the Security deed and/or to sell the subject property;

- Declaring that the Security Deed is not a lien against the subject property, ordering the immediate release of the security deed of record, and against Defendant and all parties claiming by, through or under them;

- A refund of any wrongfully or improperly collected fees and payments to Defendant to which it had no right;

- Pre- and post-judgment interest at the maximum rate allowed by law;

- Attorney's fees if applicable;

- Monetary relief over $200,000 but not more than $2,000,000.00; and

• Such other and further relief at law and/or in equity to which Plaintiff may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted this _13th_ day of March, 2020,

By: _____

Darryl M. Reshaw,
Sui Juris in Propria Persona
345 Phillips Drive
Fayetteville, GA 30214
770- 461 5717

pg. 27

## **VERIFICATION**

STATE OF GEORGIA        )

                                     ss

COUNTY OF FAYETTE    )

I, Darryl M. Reshaw, proceeding in Sui Juris in Propria Persona and under penalty of perjury state the following: I am over the age of 21 and competent to testify in all matters concerning the foregoing Complaint; I have prepared and read the foregoing Complaint, the pleadings and defenses set forth herein, which comes from my first-hand knowledge, information and belief, formed after reasonable enquiry, believes that they are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that they are not interposed for any improper purpose such as or needlessly increase the cost of litigation. All of the statements are true and correct.  Everything I have stated is true to the best of my knowledge and belief.

_____
Darryl M. Reshaw

Sworn to and Subscribed Before Me
This _13th_ day of March, 2020

Sharon G Robinson
NOTARY PUBLIC
Fayette County, GEORGIA
My Comm. Expires 07/31/2021

_____
NOTARY PUBLIC, State of Georgia

pg. 28

# EXHIBIT "A"

Affidavit by Auditor Joseph R. Esquivel Jr.


Signed in blue ink

After Recording Return to:
Darryl M. Reshaw
345 Phillips Dr
Fayetteville, GA 30214

## AFFIDAVIT OF JOSEPH R. ESQUIVEL JR.

I, Joseph R. Esquivel Jr, declare as follows:

1. I am over the age of 18 years and qualified to make this affidavit.

2. I am a licensed private investigator of in the State of Texas, License # A20449.

3. I make this affidavit based on my own personal knowledge.

4. I make this affidavit in support of *Mortgage Compliance Investigations* Chain Of Title Analysis & Mortgage Investigation prepared for Darryl M. Reshaw regarding the Security Instrument and the real property located at 345 Phillips Dr, Fayetteville, GA 30214, as referenced in the Fayette County Record.

5. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations.

6. I have personal knowledge and experience in the topic areas related to the securitization of mortgage loans, real property law, Uniform Commercial Code practices, specifically mortgage-backed securities by special purpose vehicles in which an entity is named as trustee for holders of certificates of mortgage backed securities.

7. I perform my research through the viewing of business records and Corporate/Trust Documents.

8. I use professional resources to view these records and documents.

*Page 1 of 10  Factual Affidavit of Joseph R. Esquivel Jr for- Darryl M. Reshaw = 345 Phillips Dr, Fayetteville, GA 30214*

9. I have the training, knowledge and experience to perform these searches and understand the meaning of these records and documents with very reliable accuracy.

10. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary.

11. My research through professional services and the viewing of actual business records and Corporate/Trust Documents, determined that an interest in the Darryl M. Reshaw Mortgage Loan Instrument was sold sometime shortly after April 30, 2007 to the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3.

12. Per the Prospectus Supplement (To Prospectus dated May 17, 2007) for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 Trust, the transaction participants of the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 are: (1) **Sponsor/Seller**, DB Structured Products, Inc., (2) The **Depositor**: MortgageIT Securities Corp., a Delaware corporation a wholly owned subsidiary of MortgageIT, Inc., a New York corporation (3) Issuing Entity: The Depositor formed the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3, a common-law trust created under the laws of the State of New York, pursuant to the Pooling and Servicing Agreement. (4) **Trustee**: HSBC Bank USA, National Association, a national banking association. The Trust closed on or about May 31, 2007 (see, PROSPECTUS at the SECURITY EXCHANGE COMMISSION'S ("SEC") website see also, annexed Exhibit "A," pages 1, 2 of the PROSPECTUS for the convenience of the reader).

13. I have looked at a purported to be true and correct copy of a Tangible Promissory Note of Darryl M. Reshaw dated April 30, 2007, regarding a loan for $569,000.00. The Original Lender of the April 30, 2007 Reshaw loan is Countrywide Bank, FSB. The signed Note is NOT indorsed: (See Exhibit "B" attached within)

    a. This copy of the Darryl M. Reshaw Note shows No indorsement

14. The Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named in any way on the Darryl M. Reshaw Note.

    a. Select Portfolio Servicing Inc., is not named or referenced in any way on the Darryl M. Reshaw Note.

    b. DB Structured Products, Inc.,as Sponsor for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named or referenced in any way on the Darryl M. Reshaw Note.

    c. MortgageIT Securities Corp., as Depositor for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA is not named or referenced in any way on the Darryl M. Reshaw Note.

    d. HSBC Bank USA, National Association as Trustee for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named or referenced in any way on the Darryl M. Reshaw Note.

15. The Darryl M. Reshaw Note states, "In return for a loan that I have received, I promise to pay ..." This verbiage refers to a "loan" that occurred in the past. Between the Note and the Security Deed, neither state or even indicate *who* gave a "loan," *when* the "loan" happened, *how* much was given for the "loan," *how* did the "loan" take place, and *what* was "loaned" -- "credit" or "money," and if credit, *where* did the "credit" come from, and whether the "credit was backed by "money." Without this information in the Note and Security Deed, there is no proof in the Darryl M. Reshaw Note and Security Deed that shows "consideration" was given to Darryl M. Reshaw for a "loan." The Darryl M. Reshaw Note and the Security Deed do not say that Countrywide Bank, FSB, gave Darryl M. Reshaw a "loan" or any consideration of any kind.

16. Per the language in the Note, the Note and the "loan" are two different matters. Neither

provides *proof/evidence* as to *who* gave the alleged "loan," *when* the alleged "loan" happened, *how* much was given for the alleged "loan," *how* did the alleged "loan" take place, and *what* was "loaned" = "credit" or "money," and if it was credit, *where* did the "credit" come from, and whether the "credit was backed by "money." The Note and the Security Deed do not say that Countrywide Bank, FSB, gave Darryl M. Reshaw a "loan" or any consideration of any kind.

17.     Without the *factually unsupported* clause in the Note, "*In return for a loan I have received …*", there is *nothing* in the Note or the Security Deed that states that any kind of "loan," as defined by State Law or Black's Law Dictionary, or any other consideration was given to Darryl M. Reshaw.

18.     The Darryl M. Reshaw Note is not evidence of a "loan" given by Countrywide Bank, FSB, to Darryl M. Reshaw.

19. I have looked at a Security Deed of Darryl M. Reshaw dated April 30, 2007 and filed in the Official Records of the Fayette County Clerk of the Court on May 14, 2007 as ins# BK:3229 PG: 467-487. (See Exhibit "C" attached within)

      a.   The Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named in any way to the Darryl M. Reshaw Security Deed

      b.   Select Portfolio Servicing Inc., is not named or referenced in any way on the Darryl M. Reshaw Security Deed

      c.   DB Structured Products, Inc., as Sponsor for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named or referenced in any way on the Darryl M. Reshaw Security Deed

      d.   MortgageIT Securities Corp., as Depositor for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is not named or referenced in any way on the Darryl M. Reshaw Security Deed

Deed to Secure Debt", dated May 11, 2012 and filed in the Official Records of the Fayette County Clerk of the Court on May 24, 2012 as Ins# 884061 BK: 3896 PG: 546, signed by Serna Harman and Franisco J. Avila Jr as Vice President and Assistant Vice President and notarized May 11, 2012 by Quan Nguyen, Texas Notary Commission #N/A, where Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP grants, assigns, and transfers to HSBC Bank USA, National Association, as Trustee for the Holders of the Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-OA3. (See Exhibit "G" attached within)

27. There is no sale of the Darryl M. Reshaw Mortgage Loan caused through the Darryl M. Reshaw Transfer and Assignment of Deed to Secure Debt.

28. The Darryl M. Reshaw Assignment of Security Deed was recorded on May 24, 2012, which is five (5) years *after* the Trust closed on or about May 31, 2007, with, allegedly, Darryl M. Reshaw's Note and Security Deed already in the Trust.

29. The transfer and sale of all Beneficial Interest of the Darryl M. Reshaw Security Deed to Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 should have been done on or before the Closing Date of the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 which was May 31, 2007. The requirements for defining a REMIC from IRS can be found at 26 USCA §860 A thru G and by going to https://www.gpo.gov/fdsys/pkg/USCODE-2009-title26/html/USCODE-2009-title26-subtitleA-chap1-subchapM-partIV-sec860D.htm which mean that the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 is unable to have any other assets put into the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 after the Closing Date of May 31, 2007. The Assigning of a defective obligation to the REMIC also goes against what is required (Verbatim provided in pertinent part below)
USCA stands for United States Code Annotated.

    Title 26 is the Internal Revenue Code

        Subchapter M includes Regulated Investment Companies and Real Estate

Investment Trusts.

*26 U.S.C. 860D*

*United States Code, 2009 Edition*

*Title 26 - INTERNAL REVENUE CODE*

*Subtitle A - Income Taxes*

*PART IV - REAL ESTATE MORTGAGE INVESTMENT CONDUITS*

*Sec. 860D - REMIC defined*

*From the U.S. Government Printing Office, www.gpo.gov*

*§860D. REMIC defined*

*(a) General rule*

*For purposes of this title, the terms "real estate mortgage investment conduit" and "REMIC" mean any entity—*

*(4) as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of <u>qualified mortgages and permitted investments.</u>*

30. The Assignment of Security Deed dated May 11, 2012 and filed in the Official Records of the Fayette County Recorders' Office on May 24, 2012 assigned a defective obligation to the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 as this loan was in default when the assignment was filed. This information can be found by going to the website https://www.gpo.gov/fdsys/pkg/USCODE-2009-title26/html/USCODE-2009-title26-subtitleA-chap1-subchapM-partIV-sec860G.htm

.26 U.S.C. 860G(a)(4)(B)(ii)

(a) Definitions

(4) Qualified replacement mortgage

The term "qualified replacement mortgage" means any obligation—

(A) which would be a qualified mortgage if transferred on the startup day in exchange for regular or residual interests in the REMIC, and

(ii) a defective obligation within the 2-year period beginning on the startup day.

31. I have looked at the Fayette County Record relating to the Darryl M. Reshaw Security Deed dated April 30, 2007. The Fayette County Record shows no record of a release of the Security Deed as required in covenant 23 of the Security Deed which states, **"Release, Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs…"** This has not happened.

32.    At that moment when the Darryl M. Reshaw loan was sold to the Sponsor of the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3, the terms of satisfaction in the Darryl M. Reshaw Security Deed were contractually extinguished or perfected upon the sale of the Darryl M. Reshaw Note, which is deemed a *bona fide* sale.

33.    The Darryl M. Reshaw Security Deed does not distinguish how "payment of all sums secured by this Security Instrument" should be made or by whom. When the sale of the Darryl M. Reshaw loan to the Sponsor of the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 took place, that payment for the Darryl M. Reshaw Note satisfied **Covenant 23** of the Darryl M. Reshaw Security Deed.

34.    The Darryl M. Reshaw Security Deed is not an enforceable security instrument/lien since the Darryl M. Reshaw Security Deed became void when Lender, sold the "loan" to the Sponsor of the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3.

The above statements are affirmed by me under penalty of perjury under the laws of the State of Texas to be true and correct to the best of my knowledge and belief, are based on my own personal knowledge, and I am competent to make these statements.

FURTHER THE AFFIANT SAYETH NAUGHT

By _Joseph R Esquivel_         Executed on _10/26/2018_

Joseph R Esquivel, Jr.
Private Investigator License # A20449
Mortgage Compliance Investigations LLC

STATE OF TEXAS       )
                     )
COUNTY OF TRAVIS     )

Subscribed and sworn before me, _Lori M. Esquivel_,

Notary Public, on this _26th_ day of _October_, 2018 by

_Joseph R. Esquivel Jr._, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me. WITNESS my hand and official seal.

_Lori M. Esqui_
Notary Public

LORI M. ESQUIVEL
Notary ID # 130167889
My Commission Expires
March 25, 2019